UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DERRICK A. GRAHAM,

               Petitioner,

v.                                     Case No. 3:08-cv-245-J-33JRK

WALTER A. MCNEIL,
et al.,

               Respondents.

_____

**ORDER**

**I. Status**

Petitioner Derrick A. Graham, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) and Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. #2) (hereinafter Memorandum of Law) pursuant to 28 U.S.C. § 2254 on March 10, 2008.  Petitioner Graham challenges a 2005 state court (Duval County, Florida) judgment of conviction for armed robbery, dealing in stolen property and attempted armed kidnapping on the following grounds: (1) ineffective assistance of trial counsel for failure to inform Petitioner of the law of circumstantial evidence and the affirmative defense of a reasonable

hypothesis of innocence; (2) ineffective assistance of trial counsel for misleading Petitioner to believe that a best interest guilty plea to some counts, while proceeding to trial on the other counts, could not be entered; and (3) ineffective assistance of trial counsel for failure to investigate an alibi witness when the witness was known to counsel and available and willing to testify, thus resulting in the entering of a guilty plea by Petitioner.

Respondents have responded. <u>See</u> Respondents' Answer in Response to Order to Show Cause (Doc. #6) (hereinafter Response). In support of their contentions, they have submitted exhibits.[1] Petitioner was given admonitions and a time frame within which to respond. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #4). Petitioner has responded. <u>See</u> Petitioner's Reply to Respondents' Answer (Doc. #10). This case is now ripe for review.

## II. Procedural History

On April 14, 2005, the State charged Petitioner Derrick Graham in a ten-count Amended Information with armed robbery (count one); armed kidnapping (count two); armed burglary with assault or battery (count three); burglary of a dwelling (count four); grand theft (count five); dealing in stolen property (count six); attempted armed kidnapping (count seven); carrying a concealed firearm (counts eight and nine); and aggravated assault (count ten). Ex. A at 43-45, Amended Information. The charges arose from

---

[1] The Court will hereinafter refer to Respondents' exhibits, attached to their Response, as "Ex."

events occurring on three separate dates (December 13, 2002; December 17, 2002; and February 6, 2003) based on the following facts, which are set forth in the State's Response to Defendant's Motion for Severance, Petitioner's Memorandum of Law and the transcript of the plea proceeding.  Ex. A at 48-59; Petitioner's Memorandum of Law (Doc. #2); Ex. A at 61-88, Transcript of the Plea Proceeding (hereinafter Plea Tr.) (prosecutor's setting forth the factual basis for the plea).

At approximately 6:30 p.m. on December 13, 2002, John McLennan (the victim) arrived home.  Ex. A at 48.  At that time, Mr. McLennan was assaulted by a man with a gun.  Id.  The man fired a gun into the victim's home.  Id.  Law enforcement collected a cartridge casing at the scene, but found no fingerprints or DNA at the scene.  Id.  Mr. McLennan did not see his attacker.  Id. However, Mr. McLennan heard the perpetrator speak for several minutes and was able to describe the perpetrator's race and gender. Id.

The following day, on December 14, 2002, Mr. McLennan went to Berkman Plaza to inquire about renting an apartment.  Id. at 49. Although he did not make a final decision on whether he would sell his home, he knew he wanted to live in a more secure residence and therefore obtained the leasing paperwork which he took to his home. Id.

On December 17, 2002, Mr. McLennan left town for one week. Id. When he returned, he discovered that his home had been burglarized. Id. Mr. McLennan's computer and other miscellaneous office items had been stolen. Id. His stereo and television were stacked at a window that appeared to be the point of entry and exit, and his 1992 Blazer had been stolen. Id. Law enforcement did not obtain any fingerprint evidence from the scene. Id.

On December 31, 2002, law enforcement stopped Mr. McLennan's Blazer. Id. The driver fled from the scene after briefly interacting with the officer. Id. Law enforcement arrested the passenger, Felicia Wallace, for trespassing in a stolen conveyance. Id. Although she did not know the driver by name, Ms. Wallace agreed to help identify the driver. Id.

On February 6, 2003, at approximately 8:00 a.m., Mr. McLennan was walking to his vehicle in the secured parking lot of Berkman Plaza when a man yelled for him to get into the car. Id. Mr. McLennan saw a black male, who was wearing a neck gaiter over his face, point a gun at him. Id. Mr. McLennan screamed for help and crawled into a passing vehicle. Id. The driver of the passing vehicle jumped out of his car and chased the gunman. Id. The gunman jumped off the second floor of the parking garage, changed clothes and dumped a backpack behind a dumpster. Id. Mr. McLennan told law enforcement that he thought the gunman was the same man who had previously robbed his home on December 13, 2002.

4

On February 18, 2003, Felicia Wallace (the female passenger) identified Petitioner Derrick Graham from computerized mug files as the driver of Mr. McLennan's Blazer which was stopped by law enforcement on December 31, 2002. <u>Id</u>. at 49-50.

On February 21, 2003, the Jacksonville Sheriff's Office crime laboratory identified the prints collected from the Blazer as belonging to Petitioner. <u>Id</u>. at 50. Law enforcement obtained a warrant for Petitioner's arrest on the charge of grand theft auto and took Petitioner into custody on February 26, 2003. <u>Id</u>. At the time of his arrest, Petitioner had several pieces of the victim's identification on his person. <u>Id</u>.

According to the State, Petitioner was motivated to commit these crimes by a need for money. <u>Id</u>. at 52. During the armed robbery, Petitioner asked the victim for $100,000. <u>Id</u>. During the second burglary of the victim's home, the remote locator and keys to the victim's other car, a Mercedes, were stolen. <u>Id</u>. at 53. The victim's recently signed lease for an apartment at Berkman Plaza was also stolen. <u>Id</u>. The keys and victim's personal papers were found in the backpack abandoned at the scene of the attempted armed kidnapping. <u>Id</u>.

Petitioner also gave the victim's computer to a friend, Michael Walker. <u>Id</u>. at 57. Law enforcement later identified the gun found at the scene of the February 6, 2003, attempted armed kidnapping as having fired the shell casing found at the December

13, 2002, armed robbery.  Plea Tr. at 73.  DNA obtained from the firearm matched Petitioner's DNA.  Id.  DNA found on the items in the backpack also matched Petitioner.  Id.

During the course of the pretrial proceedings, trial counsel (Patricia Ann Kyser, Assistant Public Defender) filed a motion for severance of counts on October 11, 2004.  Ex. A at 46.  Counsel argued that the charges against Petitioner should be severed into several different cases for trial in order to afford Petitioner a fair trial.  Id. at 46-47.  The State responded to the motion, contending that the offenses were related, constituted admissible evidence of other crimes or wrongs and/or the evidence of the multiple counts was admissible as inextricably intertwined evidence.  Id. at 48-59.  On May 5, 2005, the trial court denied the motion to sever the counts.  Id. at 60.

On May 27, 2005, Petitioner Derrick Graham entered into a negotiated plea agreement, which provided that he enter a plea of guilty for convenience to armed robbery (count one), dealing in stolen property (count six) and attempted armed kidnapping (count seven).  Id. at 30, Plea of Guilty and Negotiated Sentence; Plea Tr. at 63.  The agreement called for Petitioner to be sentenced to twenty years of imprisonment with a twenty-year mandatory minimum on the armed robbery count and fifteen years of imprisonment on the dealing in stolen property and attempted armed kidnapping, to run concurrently.  Id.  The plea agreement also resolved Petitioner's

pending violation of probation.  Id.  In exchange for the plea agreement, the State agreed to drop the remaining counts.  Id.

Petitioner's plea agreement provided that he and his attorney had fully discussed all aspects of the case, his attorney had answered all of his questions, and that he was satisfied with his attorney's services.  Ex. A at 30.  Petitioner also acknowledged that he had been advised of the nature of the charges against him and any possible defenses.  Id.  Petitioner further acknowledged that by entry of his plea he understood that he was giving up the right to call witnesses in his own behalf.  Id.

During the plea hearing, the trial court accepted Petitioner's plea and received a factual basis for the plea.  Plea Tr. at 63-76. The trial court inquired of Petitioner as to whether he was under the influence of any medication, alcohol, or other substance that impaired his ability to understand what was occurring.  Id. at 65. Petitioner indicated that he was not.  Id.  Petitioner stated that he had sufficient time to discuss his case with his lawyers.[2]  Id. at 66.  Petitioner also acknowledged that he had no complaints about the representation he had received.  Id.  Petitioner confirmed that he understood that hearings on motions and depositions would stop because he had entered a plea to the

---

[2] Petitioner Derrick Graham explained that he had the assistance of two lawyers (Assistant Public Defender Phyllis Wiley and Assistant Public Defender Patricia Kyser) over the course of two years.  Plea Tr. at 66; Petition at 13.

charges. _Id_. Petitioner affirmed that he understood that he had the right to present a defense and to find alibi witnesses who could testify that he was not present at the crime scenes at the time the crimes were committed. _Id_. at 67. However, he was notified that, by entering the guilty pleas, he would give up the right to proceed to trial and present a defense. _Id_. Petitioner indicated that he understood the sentences he would receive pursuant to the plea agreement. _Id_. at 67-68. Further, he agreed that the pleas were entered with his knowledge and consent. _Id_. at 69. Petitioner stated that he understood that by entering his pleas he was giving up the right to trial by jury, the right to confront and cross-examine the witnesses against him, the right to have witnesses appear on his behalf, the right against self-incrimination, the right to require the State to prove the charges against him beyond a reasonable doubt, and the right to appeal all matters related to the judgment, including the issue of guilt or innocence. _Id_. Petitioner noted that he was entering the pleas because it was in his best interest to do so. _Id_. at 70. The trial judge informed him that, although he entered the pleas because it was in his best interest to do so, he could not "come back later and have a trial . . . ." _Id_.

The prosecutor set forth the factual basis for the pleas as well as the evidence the State would present on the three charges.

> As to count one, the armed robbery, the
> state could prove beyond a reasonable doubt

that on December 13th, 2002, in Duval County, Florida, the defendant took money from John McClennon and used a firearm to do so and while using that firearm did discharge that firearm. That is contrary to 812.132(A) Florida Statutes.

As to count six, the state could prove beyond a reasonable doubt that on or between December 17th, 2002, and February 26th, 2003, that the defendant did traffic or sell computer equipment that he knew or should have known was stolen. This is contrary to 812.019(1) Florida Statutes.

As to count seven, the state could prove on February 6th, 2003, that the defendant did attempt to abduct John McClennon against his will for purposes of committing a robbery. This is contrary to 787.01(1)(A)2, Florida Statutes.

The proof in this case is that the defendant fired a projectile within the home of John McClennon. That shell casing was recovered. That shell casing was later identified to a firearm that was recovered at the February 6th, 2003 incident. That firearm matched the shell casing that was left behind at the armed robbery on December 13th, 2002.

Also with that firearm were items that contained the defendant's DNA. Based on those the state could prove the identity of the person that committed these three crimes.

. . . .

As to the dealing in stolen property, the state has a witness that says the victim's computer was sold to him and obviously the defendant is the person that stole it. So the state had proof of that as well.

. . . .

The evidence of that [(the armed robbery, count one)] is the defendant broke into the --

9

actually was in the home when the victim came home and at gunpoint kidnapped him, robbed him and obviously committed an armed burglary and then left and fired the gun.  The gun that was recovered with the items in the Berkman Plaza incident, that gun was linked ballistically to the gun that was used in the first incident.

In addition, the defendant took in the second incident, the dealing stolen property grand theft incident, the defendant rebroke into the victim's home and stole various property including the victim's car and the victim's keys and the victim's lease that he was signing at the Berkman Plaza which then in turn linked him to the February 6th incident.

Id. at 72-74.  Defense counsel did not have any legal objection to the factual basis set forth by the prosecutor.  Id. at 75.  The trial judge found that there was a factual basis for the guilty pleas and that Petitioner freely and voluntarily entered his guilty pleas with a full understanding and knowledge of the charges, the consequences and the maximum and minimum sentences.  Id.  He specifically found that each plea was entered freely and voluntarily.  Id.  On June 30, 2005, the trial court sentenced the Petitioner in accordance with the terms of the negotiated plea agreement.  Ex. A at 32-39, 81-87.  Petitioner did not appeal.

On or about July 24, 2006, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising three grounds.  Id. at 1-23.  In the first ground, he claimed that trial counsel misled him to believe that a plea of guilty in his best interest could not be entered as to some counts (counts four, five and six pertaining to the December 17, 2002,

incident), while he proceeded to trial on the other counts (counts one, two, three, seven, eight, nine and ten pertaining to the December 13, 2002, and the February 6, 2003, incidents). <u>Id</u>. at 14-15. According to Petitioner, he was willing to enter a plea to the charges related to the December 17, 2002, burglary of Mr. McLennan's home, the theft of the computer equipment and dealing in the stolen property (the computer). <u>Id</u>. at 15-16. Petitioner contends that he was led to believe by trial counsel that he could not enter a plea to those counts without receiving a plea offer from the State. <u>Id</u>. Petitioner further stated that he "does not allege that counsel intentionally mis-led [sic] him or that counsel actually mis-spoke [sic] the law, it is the defendant's <u>understanding</u> of this advice that must be considered." <u>Id</u>. at 16 (emphasis in original). In his second ground, Petitioner alleged that trial counsel failed to investigate his alibi witness who was available and willing to testify, and that if trial counsel had investigated that witness, Petitioner would have insisted on proceeding to trial. <u>Id</u>. at 14. Specifically, Petitioner alleged that Tammy Graham, his cousin, would have testified that Petitioner was with her at the time of the attempted armed kidnapping. <u>Id</u>. at 17. He alleges that Tammy Graham would have testified that Petitioner Derrick Graham was at her residence during the morning hours of February 6, 2003. <u>Id</u>. at 17-18. In his third ground, Petitioner claimed that his plea was not knowingly and voluntarily

entered because trial counsel failed to inform him of the law dealing with circumstantial evidence. _Id_. at 14. Petitioner alleged that all of the evidence in this case constituted circumstantial evidence. _Id_. at 19. Petitioner claimed that he had a reasonable hypothesis of innocence, that being that he had given the clothing found at the scene of the armed kidnapping to "K.C." _Id_. at 21-22. Petitioner also claimed that K.C. sold him the computer and lent him the truck. _Id_. at 21. Petitioner claimed that his trial counsel "should have informed him of the laws of circumstantial evidence. That an affirmative defense to a circumstantial evidence case is a reasonable explanation." _Id_. at 22.

On June 19, 2007, the trial court denied Petitioner's motion for post conviction relief. _Id_. at 24-29. On appeal, Petitioner filed a _pro se_ brief. Ex. B, Appellant's Initial Pro Se Brief. In the brief, he briefed the third claim contained in his motion for post conviction relief. _Id_. at 2-5. Petitioner claimed that the trial court misconstrued his claim, and that his claim was actually that trial counsel failed to inform him of the reasonable hypothesis of innocence affirmative defense in a circumstantial evidence case. _Id_. The State filed its notice that it would not file an answer brief pursuant to Florida Rule of Appellate Procedure 9.141. Ex. C. Petitioner filed a notice of supplemental authority related to his third claim contained in his motion for

post conviction relief.  Ex. D.  On February 22, 2008, the
appellate court per curiam affirmed without issuing a written
opinion.  Graham v. State, 975 So.2d 1137 (Fla. 1st DCA 2008); Ex.
E.  The mandate was issued on March 19, 2008.  Ex. F.

     The Petition (handed to prison officials for mailing on March
5, 2008; filed March 10, 2008) is timely filed within the one-year
period of limitation.  See 28 U.S.C. § 2244(d); Response at 9.

### III. Evidentiary Hearing

     "In deciding whether to grant an evidentiary hearing, a
federal court must consider whether such a hearing could enable an
applicant to prove the petition's factual allegations, which, if
true, would entitle the applicant to federal habeas relief."
Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation
omitted).  "It follows that if the record refutes the applicant's
factual allegations or otherwise precludes habeas relief, a
district court is not required to hold an evidentiary hearing."
Id.

     This Court has carefully reviewed the record and concludes
Petitioner is not entitled to an evidentiary hearing.  The
pertinent facts of the case are fully developed in the record
before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th
Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's]
claim[s] without further factual development."  Turner v. Crosby,
339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034

(2004). Therefore, an evidentiary hearing will not be conducted by this Court.

## IV. Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[3] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an

---

[3] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding." 28 U.S.C. § 2254(d);
> <u>Marquard</u>, 429 F.3d at 1303. The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision. <u>See</u> <u>Carey v. Musladin</u>,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing <u>Williams v. Taylor</u>, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
> F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." <u>Schriro</u>, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See</u> <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th

15

Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. <u>Id</u>. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694, 104 S.Ct. at 2068.

<u>Gaskin v. Sec'y, Dep't of Corr.</u>, 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between.'" <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of <u>Strickland</u>. We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted). As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." <u>Id</u>. at 1314 n. 15 (quoting <u>Williams v. Head</u>, 185 F.3d 1223, 1228 (11th Cir. 1999)). Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." <u>Id</u>. at 1315 n.16. We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made. <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

In _Hill v. Lockhart_, 474 U.S. 52, 58-59 (1985) (footnote omitted), the Court held:

> that the two-part _Strickland v. Washington_ test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the _Strickland v. Washington_ test is nothing more than a restatement of the standard of attorney competence already set forth in _Tollett v. Henderson_, _supra_, and _McMann v. Richardson_, _supra_. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Ineffective assistance of counsel may also require that a plea be set aside on the ground that it was involuntary because voluntariness implicates not only threats and inducements but also ignorance and incomprehension. See _Hill v. Lockhart_, 474 U.S. at 56 (quoting _North Carolina v. Alford_, 400 U.S. 25, 31 (1970)) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

> "A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" _Cuyler v. Sullivan_, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (quoting _McMann v. Richardson_, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)); _see Hill v. Lockhart_, 474 U.S. 52, 58-59, 106

18

> S.Ct. 366, 370-71, 88 L.Ed.2d 203 (1985)
> (holding that, in the plea context, a habeas
> petitioner establishes ineffective assistance
> of counsel by demonstrating that counsel's
> advice and performance fell below an objective
> standard of reasonableness, based upon which
> he pled guilty).   For a guilty plea to
> "represent an informed choice" so that it is
> constitutionally "knowing and voluntary," the
> "[c]ounsel must be familiar with the facts and
> the law in order to advise the defendant of
> the options available." Scott v. Wainwright,
> 698 F.2d 427, 429 (11th Cir. 1983).   "The
> failure of an attorney to inform his client of
> the relevant law clearly satisfies the first
> prong of the Strickland analysis . . . as such
> an omission cannot be said to fall within 'the
> wide range of professionally competent
> assistance' demanded by the Sixth Amendment."
> Hill, 474 U.S. at 62, 106 S.Ct. at 372 (White,
> J., concurring) (quoting Strickland v.
> Washington, 466 U.S. 668, 690, 104 S.Ct. 2052,
> 2066, 80 L.Ed.2d 674 (1984)).

Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995).

A federal habeas court reviews a state court guilty plea only for compliance with constitutional protections.

> This court has concluded that "[a] reviewing
> federal court may set aside a state court
> guilty plea only for failure to satisfy due
> process:   If a defendant understands the
> charges against him, understands the
> consequences of a guilty plea, and voluntarily
> chooses to plead guilty, without being coerced
> to do so, the guilty plea . . . will be upheld
> on federal review." Stano v. Dugger, 921 F.2d
> 1125, 1141 (11th Cir.) (en banc), cert.
> denied, ___ U.S. ___, 112 S.Ct. 116, 116 L.Ed.
> 2d 85 (1991).

Jones v. White, 992 F.2d 1548, 1556-57 (11th Cir.), cert. denied, 510 U.S. 967 (1993).

Thus, in order for a guilty plea to be constitutionally valid, it must be made knowingly, intelligently, and voluntarily.  <u>Pardue v. Burton</u>, 26 F.3d 1093, 1096 (11th Cir. 1994).

> A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial.  <u>Brady v. United States</u>, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).  "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  <u>Id</u>.; <u>United States v. Fairchild</u>, 803 F.2d 1121, 1123 (11th Cir. 1986) (per curiam).

> Reviewing federal courts "may set aside a state court guilty plea only for failure to satisfy due process."  <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir.) (en banc), <u>cert</u>. <u>denied</u>, 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991).  "[W]hen it develops that the defendant was not fairly apprised of its consequences" or when "the defendant pleads guilty on a false premise" in the prosecution's plea agreement, a guilty plea violates the Due Process Clause.  <u>Mabry v. Johnson</u>, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984).  The Court has instructed that the "essence" of any promises that induce a guilty plea "must in some way be made known" to the defendant.  <u>Santobello v. New York</u>, 404 U.S. 257, 261-62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

> For a guilty plea to be entered knowingly and intelligently, "'the defendant must have not only the mental competence to understand and appreciate the nature and <u>consequences</u> of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the <u>legal</u> <u>options</u> <u>and</u> <u>alternatives</u> <u>that</u> <u>are</u> <u>available</u>.'"  <u>Stano</u>, 921 F.2d at 1142 (citation omitted) (emphasis added).  Voluntariness implicates "[i]gnorance, incomprehension," and "inducements" as well as

"coercion, terror" and "threats." <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); <u>Stano</u>, 921 F.2d at 1141. Thus, "[i]gnorance of the consequences of a guilty plea may require its rejection." <u>Stano</u>, 921 F.2d at 1141 (citing <u>Boykin</u>, 395 U.S. at 243-44, 89 S.Ct. at 1712).

<u>Finch</u>, 67 F.3d at 914-15.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that counsel was ineffective for failure to inform Petitioner of the law of circumstantial evidence and the affirmative defense of a reasonable hypothesis of innocence. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion (as the third claim). In denying this claim, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> The Defendant's third claim is that his plea was not knowingly and voluntarily entered where defense counsel "failed to inform him of the law dealing with circumstantial evidence cases." (Defendant's Memorandum at 6.) To the extent the Defendant is attempting to challenge the sufficiency of the evidence against him, the Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking post conviction relief. <u>Betts v. State</u>, 792 So.2d 589 (Fla. 1st DCA 2001); <u>Jackson v. State</u>, 640 So.2d 1173 (Fla. 2d DCA 1994). Further, this Court notes that the Defendant bears the burden of establishing a valid ineffective assistance claim. <u>Freeman v. State</u>, 761 So.2d 1055, 1061 (Fla. 2000); <u>Kennedy v. State</u>, 547 So.2d 912 (Fla. 1989);

_Parker v. State_, 603 So.2d 616, 617 (Fla. 1st DCA 1992). In _Parker v. State_, the First District Court of Appeal affirmed the denial of Parker's Rule 3.850 motion where the Court found that Parker had failed to meet this burden:

> Appellant's allegations of ineffective assistance of counsel are stated as mere conclusions, unsupported by allegations of specific facts which, when considered in the totality of the circumstances, are not conclusively refuted by the record and demonstrate a deficiency of counsel that was detrimental to the defendant. As such, the allegations are facially insufficient to demonstrate entitlement to relief.

> _Id_. at 616. The Florida Supreme Court affirmed this ruling stating it would not address the issues "because they are bare bones, conclusory allegations." _Parker v. State_, 904 So. 2d 370, 375 n.3 (Fla. 2005); _see_ _Gordon v. State_, 863 So.2d 1215, 1218 (Fla. 2003) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing."). This Court finds that the Defendant's claim that defense counsel "failed to inform of the law dealing with circumstantial evidence cases" is conclusory and insufficiently pled. _Parker_, 904 So.2d at 375; _Strickland_, 466 U.S. 668.

Ex. A at 27-28.

As previously noted, the appellate court per curiam affirmed. Accordingly, this ground was rejected on the merits by the state trial and appellate courts. Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review

of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Further, this ineffectiveness claim is without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003). Counsel's performance was not deficient.

In this case, the evidence was not purely circumstantial. For instance, Petitioner was found to be in possession of certain items, and direct testimony would have linked him to the stolen Blazer. The voice identification by the victim would have also

23

constituted direct evidence.  Thus, only a portion of the State's case would have relied upon circumstantial evidence.  The evidence itself would have provided a contrary theory to Petitioner's current "reasonable hypothesis."  As a result, the questions of fact would have been left for a jury to decide based upon the credibility of the witnesses and the strength of the circumstantial evidence.

Additionally, there is no affirmative defense of a "reasonable hypothesis of innocence" to a circumstantial evidence case.  The Florida Supreme Court has stated:

> Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.

Darling v. State, 808 So.2d 145, 155 (Fla. 2002) (quoting State v. Law, 559 So.2d 187 (Fla. 1989)).  "Therefore, a motion for judgment of acquittal should be granted in a case based wholly upon circumstantial evidence if the state fails to present evidence from which the jury could exclude every reasonable hypothesis except that of guilt."  Reynolds v. State, 934 So.2d 1128, 1146 (Fla. 2006).  "The state is not required to 'rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is

inconsistent with the defendant's theory of events." <u>Darling</u>, 808 So.2d at 156.

Further, when Petitioner entered his pleas at the plea proceeding, he gave up the right to challenge the strength of the State's case.  Petitioner signed a plea agreement indicating that he and his attorney had discussed all aspects of the case, his attorney had answered all of his questions and that he was satisfied with his attorney's services and representation. Petitioner also acknowledged that he was advised of the nature of the charges and any possible defenses to those charges.  At the plea proceeding, the prosecutor set forth the factual basis for the pleas, and also described the evidence that the State would present if Petitioner decided to proceed to trial.  Plea Tr. at 72-74. Further, during the plea hearing, he stated that he had sufficient time to discuss the case with his lawyers and had no complaints about the representation he had received.  <u>Id</u>. at 66. Petitioner stated that he understood that, by entering his pleas, he was giving up the right to trial by jury, the right to confront and cross-examine the witnesses against him, the right to have witnesses appear on his behalf, the right against self-incrimination, the right to require the State to prove the charges against him beyond a reasonable doubt, and the right to appeal all matters related to the judgment, including the issue of guilt or innocence.  <u>Id</u>. at 69.

Although a defendant's statements during the plea colloquy are not insurmountable, the Supreme Court held in <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977), that "the representations of the defendant [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Here, based upon the record before this Court, Petitioner has not overcome this barrier.

Even assuming *arguendo* that counsel's performance was deficient, Petitioner has not shown the resulting prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided. As noted by the trial judge at the plea hearing, Petitioner faced life imprisonment on the armed robbery charge (count one). Plea Tr. at 68. Pursuant to the plea agreement on counts one, six and seven, he received twenty years of imprisonment since all of the sentences are running concurrently. And, finally, the State agreed to drop the other charges.[4] By entering the guilty pleas, he avoided a possible term of life imprisonment if

---

[4] The State charged Petitioner Derrick Graham in a ten-count Amended Information with armed robbery (count one); armed kidnapping (count two); armed burglary with assault or battery (count three); burglary of a dwelling (count four); grand theft (count five); dealing in stolen property (count six); attempted armed kidnapping (count seven); carrying a concealed firearm (counts eight and nine); and aggravated assault (count ten). Ex. A at 43-45, Amended Information.

found guilty by a jury on the armed robbery charge.  Additionally, if he had proceeded to trial, he would have faced terms of imprisonment on all ten counts of the Amended Information.

### B. Ground Two

As ground two, Petitioner claims that counsel was ineffective for misleading Petitioner to believe that a best interest guilty plea to some counts, while proceeding to trial on the other counts, could not be entered.  As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.  In the Rule 3.850 motion, he claimed that trial counsel misled him to believe that a plea of guilty in his best interest could not be entered as to some counts (counts four, five and six pertaining to the December 17, 2002, incident), while he proceeded to trial on the other counts (counts one, two, three, seven, eight, nine and ten pertaining to the December 13, 2002, and the February 6, 2003, incidents).  Ex. A at 14-15.  Petitioner was willing to enter a plea to the charges related to the December 17, 2002, burglary of Mr. McLennan's home, the theft of the computer equipment and dealing in the stolen property (the computer).  Id. at 15-16.

However, Respondents contend that Petitioner failed to include this claim in the appeal of the Rule 3.850 motion and therefore did not sufficiently exhaust the issue.  Response at 16-18.  As previously noted, Petitioner submitted an appellate brief, raising only ground one.  Under Florida law, in an appeal from the summary

denial of a Rule 3.850 motion without an evidentiary hearing, no appellate briefs are required. <u>See</u> Fla. R. App. P. 9.141(b)(2)(C). Therefore, "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief." <u>Darity v. Sec'y, Dep't of Corr.</u>, 244 Fed. Appx. 982, 984 (11th Cir. 2007) (not selected for publication in the Federal Reporter) (citation omitted). Thus, Petitioner has sufficiently exhausted this ground.

In denying this claim, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's first ground for relief, he alleges that counsel rendered ineffective assistance of counsel when [s]he "misled" the Defendant to believe that he could not enter a plea to some counts while taking other counts to trial. The Defendant was charged by Information with ten counts that he avers are divided into three separate and distinct occurrences. (Defendant's Memorandum at 2.) (Exhibits "C," "D.") The Defendant claims that Episode 1 includes Counts 1,2, and 3; Episode 2 includes Counts 4,5, and 6; and Episode 3 includes Counts 7, 8, 9, and 10. Thus, the Defendant argues that he should have been allowed to enter a plea to the counts in Episode 2, and then proceed to trial on the counts in Episodes 1 and 3. However, the Defendant states that defense counsel told him that this was not an option. He states that defense counsel explained that either the Defendant could accept the State's plea offer or proceed to trial on all of the counts.

> A review of the record shows that on October 11, 2004, defense counsel filed a Motion to Sever Counts, which the State

> opposed in a Response filed on January 3,
> 2005. (Exhibits "E," "F.") On May 5, 2005, the
> Court denied the Defendant's Motion to Sever.
> (Exhibit "G.") Consequently, because the Court
> denied the Defendant's Motion to Sever,
> meaning that all of the Defendant's counts
> were joined under one case, defense counsel
> properly advised the Defendant that he could
> either accept the State's plea offer or
> proceed to trial on all of the counts. As the
> Defendant has failed to demonstrate error on
> the part of counsel as required by <u>Strickland</u>,
> the Defendant's first ground is denied.

Ex. A at 25-26.

Accordingly, this ground was rejected on the merits by the state trial court. Thus, there is a qualifying state court decision. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Further, this ineffectiveness claim is without merit. Considering the strong presumption in favor of counsel's competence, this Court concludes that counsel's performance was not deficient. Further, it is noteworthy that Petitioner conceded in state court that he was not alleging that counsel intentionally

misadvised him, but rather that he misunderstood counsel's advice. Ex. A at 16.

Even assuming *arguendo* that counsel's performance was deficient, Petitioner has not shown the resulting prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided. As set forth with respect to ground one, Petitioner faced a possible term of life imprisonment if he had proceeded to trial and was found guilty by a jury on the armed robbery charge (count one). In exchange for the plea agreement on three counts, the State agreed to drop the remaining seven counts. If he had proceeded to trial, he would have faced possible terms of imprisonment on all ten counts of the Amended Information.

### C. Ground Three

As ground three, Petitioner claims counsel was ineffective for failure to investigate an alibi witness when the witness was known to counsel and available and willing to testify, thus resulting in the entering of a guilty plea by Petitioner. Specifically, Petitioner states that Tammy Graham, his cousin, would have testified that Petitioner was at her residence during the morning hours of February 6, 2003, when the attempted armed kidnapping occurred. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.

However, Respondents contend that Petitioner failed to include this claim in the appeal of the Rule 3.850 motion and therefore did not sufficiently exhaust the issue. Response at 19-20. As previously noted, Petitioner submitted an appellate brief, raising only ground one. Under Florida law, in an appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing, no appellate briefs are required. See Fla. R. App. P. 9.141(b)(2)(C). Therefore, Petitioner's filing of the appellate brief did not waive any issues not addressed in the brief. Thus, Petitioner has sufficiently exhausted this ground.

In denying this claim, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In the Defendant's second ground for relief, the Defendant alleges ineffective assistance for counsel's failure to investigate an alleged alibi witness, the Defendant's cousin, Tammy Graham. (Defendant's Memorandum at 4.) The Defendant claims that he provided defense counsel with Ms. Graham's name and contact information, that Ms. Graham was available to testify, and that Ms. Graham could provide an alibi for the Defendant. However, during the plea colloquy, the Defendant testified that he understood that by entering his plea, he was giving up the right to present a defense:
>
>> The Court: Now, Mr. Graham, over these two years we have had hearings back and forth in court and your lawyers have been filing motions[,] taking depositions and what have you. By entering these guilty pleas all of that will end and you will be

31

sentenced pursuant to your plea agreement. Do you understand that?

Defendant: Yes, sir.

The Court: Now, when you were charged with these offenses you had the opportunity to present a defense. You have the opportunity to find what we call alibi witnesses or witnesses who will say you were not there when these [offenses] were committed. By entering these three guilty pleas none of that will matter after today. Do you understand that?

Defendant: Yes, sir.

(Exhibit "H," pages 6-7.)[5] This Court notes that a defendant may not seek to go behind his sworn testimony at a plea hearing in a post conviction motion. <u>Stano v. State</u>, 520 So.2d 278 (Fla. 1988); <u>Dean v. State</u>, 580 So.2d 808 (Fla. 3d DCA 1991); <u>Bir v. State</u>, 493 So.2d 55 (Fla. 1st DCA 1986). That is precisely what the Defendant is attempting to do in this claim. Therefore, this Court finds that the Defendant's second ground is without merit and is denied.

Ex. A at 26-27.

Accordingly, this ground was rejected on the merits by the state trial court. Thus, there is a qualifying state court decision. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's

---

[5] Plea Tr. at 66-67.

adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Further, this ineffectiveness claim is without merit. Considering the strong presumption in favor of counsel's competence, this Court concludes that counsel's performance was not deficient. Even assuming *arguendo* that counsel's performance was deficient, Petitioner has not shown the resulting prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged she should have provided. As set forth with respect to grounds one and two, Petitioner faced a possible term of life imprisonment if he had proceeded to trial and was found guilty by a jury on the armed robbery charge (count one). Further, as reflected by the plea agreement itself and the plea hearing, Petitioner accepted a plea agreement that was very beneficial to him given the ten charges that he faced with the evidence that the State planned to present to the jury if he had decided to proceed to trial on the ten counts of the Amended Information.

For all of the previously-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

33

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 25th day of July, 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sc 7/25
c:
Derrick Graham
Ass't Attorney General of Record

34